UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBRA L. HARTLEY<br>199 C Antler Drive<br>Effort, PA 18330<br><br>     Plaintiff,<br><br> v.<br><br>OFFICER WOLFERT<br>Uniformed Division, U.S. Secret Service<br>Communications Center<br>245 Murray Lane, S.W., Building T-5<br>Washington, DC 20223,<br><br>  and<br><br>OFFICER JANE DOE<br>Uniformed Division, U.S. Secret Service<br>Communications Center<br>245 Murray Lane, S.W., Building T-5<br>Washington, DC 20223,<br><br>     Defendants. | No. 12-cv-_____<br><br>Jury Trial Demanded |

**COMPLAINT**
(Violation of First Amendment rights)

**INTRODUCTION**

On July 20, 2009, plaintiff Debra Hartley stood on the White House sidewalk wearing a vest with a message, "Walking to the White House." Ms. Hartley had just walked 225 miles from her home town in the Poconos to express along the way and in Washington a message of concern about unequal opportunity for women in law enforcement—a situation she had experienced personally as a police officer. Yet the defendant United States Secret Service officers responded to her

1

quintessentially American act of expression at her journey's end not with support or simple professionalism but instead with intimidation, threats and recitation of flagrant falsehoods about the law, causing Ms. Hartley to give up in despair and abandon her effort to communicate to the public at the White House.

The officers told her the law required them to demand from her, as a "protester," a battery of personal details about herself and those accompanying her that they promised would remain forever in a Secret Service registry.  She could avoid this invasive inquiry, they said, if she left the White House sidewalk, thus offering her a dismal choice, either registering to be listed among a group the officer called "crazies" or abandoning her First Amendment rights.

Contrary to the officers' statements, Ms. Hartley needed no Secret Service registration; her actions on that day were lawful and the officers lacked authority to demand information from solo demonstrators under threat of being told to leave.  This complaint asserts a claim for damages pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics* against the Defendants Wolfert and Doe, both United States Secret Service Uniformed Division police officers.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the plaintiff's claims occurred in the District of Columbia.

## PARTIES

3. Plaintiff Debra Hartley is an adult resident of Effort, Pennsylvania.

4. Defendant Wolfert was at the time of the events at issue a sworn officer with the rank of lieutenant in the Uniformed Division of the United States Secret Service.  At the time of the events

2

at issue he was acting under color of law and within the scope of his employment. He is sued in his individual capacity.

5. Defendant Jane Doe was at the time of the events at issue a sworn officer with the rank of officer technician in the Uniformed Division of the United States Secret Service.  At the time of the events at issue she was acting under color of law and within the scope of her employment.  She is sued in her individual capacity.

## FACTS

6. Debra Hartley was until 2003 an officer in the Pocono Mountain Regional Police Department.  In her years on the force she was repeatedly treated differently in assignments and pay solely because she was a woman and she was a victim of sexual harassment.

7. In early July 2009, Ms. Hartley began a 225-mile walk from her home town to Washington, D.C., to express her concerns about sex discrimination in law enforcement.  She wore a vest bearing the words "Walking to the White House" on the front and back.

8. Ms. Hartley was accompanied on her walk by her friend, Barbara Wenninger.  Ms. Wenninger wore a vest like that of Ms. Hartley.

9. Ms. Hartley thought her concerns would be of interest to First Lady Michelle Obama. She wrote the First Lady by e-mail and through the White House web site seeking an appointment but got no answer.

10. She engaged others and the press during her walk to raise awareness about her concerns.  She stopped in Harrisburg, Pa., to try to speak to the governor.  She was not able to do so, and continued on her walk.

11. Ms. Hartley arrived in Washington after weeks of travel and walked with her friend to the sidewalk on the north side of the White House grounds, a symbolic spot from which to

send a message to the government and the public.  She added to her vest the proud words, "225 miles from the Pocono Mountains."

12.  At the guard house at the west entrance to the White House driveway, Ms. Hartley inquired about meeting the First Lady but found no appointment listed.  Her friend called the *Washington Post* and was told to look for their reporter in the press area near the same gate.  Ms. Hartley saw TV equipment inside the gate and stood nearby hoping to locate a *Post* reporter.

13.  Ms. Hartley remained on the White House sidewalk with her friend, both still wearing their vests, while Ms. Hartley's daughter parked the family van in a lawful parking space nearby and with her infant child walked to join her mother on the sidewalk.  While on the sidewalk, Ms. Hartley answered tourists' questions about her message.

14.  Defendant Officer Doe and an unknown male officer approached Ms. Hartley on their bicycles and asked Ms. Hartley about why she was there, to which she provided full answers about her walk and her underlying concerns over the unfair treatment of women in law enforcement.  The officers seemed interested, even asking what police department she had been in and wishing her luck, and left after a brief exchange.

15.  Officer Doe returned shortly with Defendant Wolfert.  To Ms. Hartley, Officer Wolfert repeated the same kinds of questions about her business on the White House sidewalk.  Ms. Hartley's daughter captured sound and video of the exchange that followed.

16.  Officer Wolfert told Ms. Hartley "right now you are someone with an actual billboard, you're somebody with a sign" and therefore "we would have to do the whole procedure with you."  Though he said "if you want to protest you can," Officer Wolfert added ominously "but we have rules" and "we're gonna have to call it in as a protest."

17. Officer Wolfert made clear that as a precondition to a "protest," Ms. Hartley and her party each had to give background data including name, date of birth and Social Security number, fill out a card, and submit to questions. He said at one point,"[w]e see if you have a record with the Secret Service," and later said he would need to "find out if you have a permit, how long you [are] going to be here, what are your intentions."

18. Officer Wolfert said "all identification is put in our records." And "there are these big records." He told Ms. Hartley that she would probably choose to leave rather than be added to the Secret Service list and be "considered one of the crazies who protest in front of the White House."

19. During Officer Wolfert's recital of these conditions, Officer Doe nodded in agreement with, or verbally emphasized the accuracy of, his statements.

20. During Officer Wolfert's discussion of the conditions she would have to meet, Ms. Hartley saw others further east on the White House sidewalk with message-bearing T-shirts. She did not see any Secret Service officers interacting with them.

21. Ms. Hartley said to Officer Wolfert, "I'm just going to leave. I'm getting the message ... I'm not protesting … I definitely don't want a record with the Secret Service. I was just trying to do something good."

22. A student from Miami, Florida, stood nearby on the White House sidewalk throughout the exchange and asked Ms. Hartley afterwards in a videotaped interview whether she felt that her First Amendment rights had been violated. Ms. Hartley said "I understand … we have to be very careful about security. But … to be told that I can get in trouble for being here is heartbreaking."

23. Officer Wolfert (echoed by Officer Doe) provided completely false information to Ms. Hartley and her companions. No reasonable officer could have believed that there was a lawful basis for telling Ms. Hartley that she and her companions had to provide their names, dates of birth and Social Security numbers, fill out a card, answer various additional questions, and obtain a permit as conditions for standing on the White House sidewalk wearing a vest with a message. The relevant law was clearly established in July 2009.

24. There is and was no law or regulation requiring plaintiff to have a permit to stand on the White House sidewalk wearing a vest with a message.

25. There is and was no law or regulation requiring plaintiff to give information about herself to, or be registered with, the Secret Service to stand on the White House sidewalk wearing a vest with a message.

26. At the time of these events, Plaintiff had not committed any crime. She had not acted suspiciously or interfered with Officers Wolfert and Doe. She had not interfered with or threatened to interfere with any Secret Service protectee, any government function or any member of the public.

27. Officers Wolfert and Doe had no legal or factual justification to inform plaintiff that there were any conditions to be met before she could continue to stand peacefully on the White House sidewalk wearing a vest with a message.

28. The unlawful conduct of Officers Wolfert and Doe was the direct and proximate cause of plaintiff's coerced decision to abandon her effort to communicate to the public on the White House sidewalk.

29. On August 19, 2010, by counsel, Ms. Hartley filed a complaint with the Secret Service about the officers' conduct in the incident. When Secret Service investigators

interviewed Officer Wolfert in September 2010, he recalled considering Ms. Hartley a "White House caller" and advising her that continued interest in the First Lady would lead to the Secret Service requesting identifying information.  The other two officers involved didn't recall similar concerns.   In a second interview in February 2011, Officer Wolfert revised his recollections.  He said he "soon determined" Ms. Hartley "had no protective interest" (i.e., posed no threat to the White House or protectees).   However, he said he decided Ms. Hartley and her companions were "a reportable protest," a situation in which he believed he was required to obtain information and complete "a White House incident report."  In his second sworn statement to investigators he said he later "determined that no report was warranted."

30.  Officer Wolfert also acknowledged that he "may have given her the indication that she had to leave the area" which was a mistake and thus he should have handled the incident "in a different manner," "used better judgment," and "chosen words more suitable."

31.  Secret Service investigators accepted Officer Wolfert's statement that he did not intend to "dissuade [Ms. Hartley] from protesting" and thus concluded he "did not intentionally infringe on Ms. Hartley's first amendment rights to protest at the White House on July 20, 2009."   Regardless of the credulity of the Secret Service investigators regarding Officer Wolfert's intent, his statements and threats (that she had to leave or submit to detailed inquiry and registration) in fact caused Ms. Hartley to end her expression.

## PLAINTIFF'S INJURIES

32.  As a direct result of the wrongful conduct of Defendant Officers Wolfert and Doe, the plaintiff was prevented from exercising her First Amendment right to express her views on the White House sidewalk and suffered embarrassment, humiliation, and emotional distress at

the prospect of being classified as "one of the crazies" for her conduct. She has been deterred from exercising her First Amendment rights on the White House sidewalk on any later occasion.

## CLAIM FOR RELIEF
### Violation of First Amendment Rights

33. Plaintiff's conduct in wearing a message-bearing vest on the White House sidewalk was protected by the First Amendment to the United States Constitution and did not violate any law or regulation requiring permission or registration or otherwise governing the time, place, and manner of expression on the White House sidewalk.

34. The actions of Defendant Officers Wolfert and Doe toward the plaintiff violated her right to freedom of expression under the First Amendment to the United State Constitution.

35. Defendants Wolfert and Doe are jointly and severally liable to Ms. Hartley in damages for their violation of her rights, pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

## REQUESTED RELIEF

WHEREFORE, plaintiff respectfully requests that this Court:

A. Rule that the First Amendment protects the right of individuals and small groups to wear message-bearing clothing on the White House sidewalk without precondition;

B. Enter judgment awarding the plaintiff compensatory damages against Defendants Wolfert and Doe in an amount appropriate to the evidence adduced at trial;

C. Enter judgment awarding the plaintiff punitive or exemplary damages against both Defendants in an amount appropriate to the evidence adduced at trial;

D. Enter judgment awarding the plaintiff her costs and reasonable attorneys' fees in this action; and

E. Grant the plaintiff such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims so triable.

Respectfully submitted,

___/s/ *Frederick V. Mulhauser*_____
Arthur B. Spitzer (D.C. Bar #235960)
Frederick V. Mulhauser (D.C. Bar #455377)
American Civil Liberties Union of the Nation's Capital
4301 Connecticut Avenue, N.W., Suite 434
Washington, DC 20008
(202) 457-0800
(202) 457-0805 (fax)
artspitzer@gmail.com
fmulhauser@aol.com

*Counsel for Plaintiff*

Date: July 19, 2012